FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Nov 03, 2026
SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL HENDRICKS, and COLLEEN HENDRICKS, individually and as the marital community comprised thereof<br><br>Plaintiffs,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire insurance company,<br><br>Defendant. | No. 2:25-CV-00340-MKD<br><br>ORDER DENYING PLAINTIFFS' MOTION TO STRIKE; AND DENYING DEFENDANT'S AND PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT<br><br>**ECF Nos. 80, 92, 118** |

Before the Court are Plaintiffs' Motion to Strike, ECF No. 80, Defendant's Motion for Partial Summary Judgment, ECF No. 92, and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 118. The Court held a hearing on October 9, 2026. ECF No. 168. Ryan M. Best and Stephanie J. Olsen represented Plaintiffs; Michael A. Guadagno and Armando Padron-Cruz represented Defendant. The Court has reviewed the record, heard from counsel, and is fully informed. For the

reasons stated on the record and as explained more fully below, the Court denies the motions.

## BACKGROUND

The following facts are taken from the Joint Statement of Uncontroverted Facts, ECF No. 130. Plaintiffs' home in Cashmere, Washington was covered by an insurance policy (hereinafter "the Policy") issued by Defendant during the relevant time. *Id.* at 2. The Policy did not cover property losses due to "continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years." *Id.* at 4-5. The Policy also excluded losses due to wear and tear. *Id.* Immediately following those exclusions, the Policy contained a "resulting loss" clause which stated: "However, we do insure for any resulting loss from items 1. through 6. unless the resulting loss is itself excluded … ." *Id.* Defendant never informed Plaintiffs that their roof was too old to insure. *Id.* at 6. The roof was 15 years old at the time of the loss. *Id.* at 2. Ten years prior, the Plaintiffs' roof had a leak in the roof where the chimney/stove pipe exits the roof, Mr. Hendricks sealed the leak, and Plaintiffs never made a claim regarding this leak. *Id.*

The January 2025 ceiling collapse was "due to water ingress through the roof." *Id.* at 3. Defendant did not physically inspect the roof, attic, sheathing, underlayment, chimney penetration, repaired areas, or interior loss area prior to

denying Plaintiffs' claim. *Id.* at 6. Defendant denied the claim on February 21, 2025, stating that the damage was caused by "one or more" exclusions and cited the Policy's exclusions for damage caused by long-term water seepage or leakage, fungi, wet rot, and dry rot. *Id.* When defense counsel characterized the roof as having "wood rot," Alek Rini, the roofing contractor, testified "I don't know about wood rot." *Id.* at 7. Mr. Rini agreed it was "just as probable" that some photos "did *not* show water damage, dry rot, mold or other leaks." *Id.* He also testified that he could not tell whether mold was actively growing or dried, or whether the water damage was active or dried. *Id.* at 7-8.

The following facts are in dispute. Defendant alleges Plaintiffs' roof suffered from a water leak for 10 years prior to the ceiling collapse on January 8, 2025. ECF No. 92 at 2. Due to the duration of the leak, Defendant claims the damage is not covered because of the provision in the Policy excluding damage from long-term water leaks. *Id.* at 6. Plaintiffs acknowledge there was a leak in the roof near the chimney but contend that Mr. Hendricks repaired that leak 10 years ago and that it did not persist. ECF No. 94 at 2-3. Defendant argues the report by its expert witness Daniel Sowell conclusively establishes that the Plaintiffs' home suffered from long-term water intrusion which caused the January 8 loss. ECF No. 92 at 9-10. Plaintiffs argue even if the damage to the roof was caused by an excluded peril, the ensuing damage to the interior of their home was

covered under the Policy's resulting loss clause. ECF No. 118 at 2. Plaintiffs contend Defendant failed to reasonably investigate their claim and that Defendant's denial letter did not identify the factual basis for the denial. ECF No. 118 at 11-13. They also argue that Defendant did not make or communicate a reasonable coverage determination. *Id.* at 2.

Plaintiffs' Complaint asserts the following claims: violation of the Washington Insurance Fair Conduct Act; breach of contract; insurer bad faith; declaratory judgment; negligent claims handling; and violations of the Washington Consumer Protection Act. ECF No. 1-2 at 6-10. On June 26, 2026, Defendant moved for summary judgment on the breach of contract and declaratory judgment claims. ECF No. 92 at 2. On July 9, 2026, Plaintiffs moved for summary judgment on their claims for breach of contract, declaratory judgment, IFCA violations, and bad faith. ECF No. 118 at 1.

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (citation omitted). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve

the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … ." *Anderson*, 477 U.S. at 255.

## DISCUSSION

### I. Plaintiffs' Motion to Strike

As a preliminary matter, Plaintiffs move to strike Exhibits 1 through 5 of the Declaration of Michael A. Guadagno in support of Defendant's Motion for Partial Summary Judgment. ECF No. 80. Exhibit 1 is a copy of Restoration 1's final report; Exhibit 2 is a copy of portions of Colleen Hendricks' deposition testimony; Exhibit 3 is a copy of portions of Daniel Hendricks' testimony; Exhibit 4 is a copy of Mr. Sowell's expert report; and Exhibit 5 is a copy of a letter sent by Defendant's employee to Plaintiffs. ECF No. 72 at 1-2.

#### A. Rule of Completeness

Plaintiffs argue Exhibits 1-4 of the Declaration should be stricken or supplemented pursuant to Federal Rule of Evidence 106. *Id.* at 2. Federal Rule of Evidence 106, "Remainder of or Related Statements," states:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

Fed. R. Evid. 106. The purpose of the rule is to "avert 'misunderstanding or distortion' caused by introduction of only part of a document." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)). The text of Rule 106 makes it clear that, where a party presents incomplete statements, the opposing party's remedy is to present the

missing portions—not to exclude the incomplete statement. *United States v. Soulard*, 730 F.2d 1292, 1301 (9th Cir. 1984) (citing Fed. R. Evid. 106).

Plaintiffs argue Defendant's incomplete exhibits are misleading, but they do not explain how or why that is true. *See* ECF No. 80 at 2. For example, Plaintiffs do not argue that the missing portions of Ms. Hendricks' testimony are necessary to correctly understand her statements presented in Exhibit 2. *Id.* Nor do they highlight contradictory statements that were left out in Defendant's excerpts. Portions of the excerpts presented by Defendant cut against Defendant's argument. *See* ECF No. 72-9 at 5. It is not as though Defendant omitted every statement that was adverse to its position.

Additionally, Plaintiffs submitted a Declaration of Stephanie J. Olsen in response to Defendant's Motion for Partial Summary Judgment. ECF No. 96. This Declaration included exhibits with excerpts from Colleen and Daniel Hendricks' deposition testimonies. ECF No. 96 at 2. It is unclear why Plaintiffs did not include the entire transcripts of their deposition testimonies, as this would likely cure any defect caused by the incompleteness of their testimonies in Defendant's Exhibits 2 and 3. The Court considers the portions of Plaintiffs' deposition testimony offered by both parties in relation to Defendant's Motion for Partial Summary Judgment. With that in mind, the Court is not persuaded that the

incompleteness of Defendant's Exhibits 1-4 renders them misleading or otherwise problematic.

**B. Hearsay**

Plaintiffs further argue that Exhibits 4 and 5 of the Declaration should be stricken as unsworn hearsay. ECF No. 80. At the summary judgment stage, a court will consider evidence, "[i]f the contents of a document can be presented in a form that would be admissible at trial." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). Therefore, "the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.*

Plaintiffs' hearsay argument appears to be based on the fact that Exhibits 4 and 5 were not accompanied by supporting declarations by the respective declarants. *See* ECF No. 72. Assuming Exhibits 4 and 5 are, in fact, hearsay and don't fall under any exception, the contents of those exhibits could be "presented in a form that would be admissible at trial." *Sandoval*, 985 F.3d at 666. For example, Mr. Sowell could testify about the opinions expressed in his report. *Id.* Accordingly, exhibits should not be excluded on hearsay grounds. *Id.* Much of Mr. Sowell's report that would have been relevant to the Motion for Summary Judgment has been excluded in a separate order. ECF No. 167.

Additionally, under these circumstances, Federal Rule of Civil Procedure 56(e)(1), allows a court to "give an opportunity to properly support or address the fact." ECF No. 101. Defendant has since filed declarations in support of Exhibits 4 and 5. ECF Nos. 102, 103. The Court finds those declarations cured the alleged defects in Exhibits 4 and 5. For these reasons, the Court denies Plaintiffs' Motion to Strike Exhibits to Declaration of Michael A. Guadagno.

**II. Defendant's Motion for Partial Summary Judgment**

Defendant moves for summary judgment on the claims for breach of contract and declaratory judgment. ECF No. 92.

Defendant frames this dispute as an issue of contract interpretation. *Id.* at 4. It argues the policy language excluding losses caused by "continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years," is unambiguous and enforceable. *Id* at 6. Defendant asserts that because the "undisputed evidence" shows the damage was caused by a long-term water leak, the damage is not covered. *Id.* at 10.

To support this argument, Defendant cites several cases in which courts have enforced the same or similar insurance policy exclusions for damage caused by long-term water seepage. *Id.* at 7-10. But in those cases, the duration of the water leak was not disputed. For example, in *Karon v. Safeco Insurance Company of*

*America*, "the parties agree that the water damage to the home occurred over a period of weeks." 2021 WL 3419037 at *6 (D. Ariz. Aug. 5, 2021). Therefore, the dispute in *Karon* was over contract interpretation.[1] *Id.* Whereas here, there is a dispute over how long water intrusion occurred. Plaintiffs contend the water intrusion occurred suddenly and was likely caused by an ice dam. ECF No. 94 at 3, 7. Defendant, meanwhile, argues the water slowly and continuously seeped through the roof over the course of 10 years. ECF No. 92 at 9.

Therefore, the question at issue here is whether water leaked into Plaintiffs' home for more than two weeks, not whether the Policy covers a leak that conclusively persisted for more than two weeks as in *Karon*.

Defendant relies on three pieces of evidence to support its contention that the roof collapse was due to long-term water intrusion: (1) portions of testimony by roofing contractor Alek Rini, (2) statements by Plaintiffs acknowledging a roof leak from ten years prior, and (3) the testimony of its expert witness, Daniel Sowell. ECF No. 92 at 9-10.

[1] The plaintiffs in *Karon* argued that only the damage that occurred *after* day 14 would be excluded under the long-term water seepage exclusion. *Id.* at *6.

**A. Mr. Rini's Testimony**

Defendant argues Mr. Rini "testified that the observed mold, decay, and moisture damage were the product of long-term exposure occurring over weeks, months, or years."[2] *Id.* at 10. Defendant contends this testimony proves the duration of the leak. *Id.*

However, "[a] trial court can only consider *admissible* evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (emphasis added) (citing Fed. R. Civ. P. 56(e)). As a lay witness, any testimony given by Mr. Rini in the form of opinion cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Instead, such opinions must be "rationally based on the witness's perception." *Id.* "In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation." *United States v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). Accordingly, Mr. Rini can testify that he observed mold or wood decay, but he

---

[2] During his deposition, Mr. Rini was asked "this [water damage] isn't something where a leak shows up and the next week you have an attic that looks like this. This is something that happens over weeks, months, or years, correct?" to which Mr. Rini answered, "I believe so yes." ECF No. 72-9 at 5-6.

cannot opine on how long the water leaked into Plaintiffs' home, because that would be outside the scope of his firsthand knowledge.

Regardless of those limitations, and contrary to Defendant's argument, Mr. Rini's testimony does not establish the lack of a genuine dispute regarding the duration of the water leak. Defendant cited one statement made by Mr. Rini while ignoring other portions of his testimony that cut against Defendant's position.

For example, when asked by defense counsel "do you see evidence in this picture of seepage or leakage of water that had taken place over time in the attic space?", Mr. Rini replied, "I didn't look for it, so no." ECF No. 72-9 at 3. Additionally, when defense counsel showed Mr. Rini photos of the mold and asked, "about how long does that leak have to be like that for [the mold and water damage] to look like this?" Mr. Rini replied, "[t]hat I do not know." ECF No. 72-9 at 5. Considered in its entirety, Mr. Rini's testimony does not establish the lack of a genuine dispute regarding how long the leak occurred at Plaintiffs' house.

**B. Plaintiffs' Testimony**

To establish the leak persisted for more than two weeks, Defendant further argues, "Plaintiffs themselves acknowledge a roof leak dating back approximately ten years." ECF No. 92. Ms. Hendricks did acknowledge there was a leak near where the chimney enters the roof around ten years before the loss, however, Ms. Hendricks also said that Mr. Hendricks sealed it and they did not have any leaks

since then. ECF No. 72-2 at 7. Similarly, Mr. Hendricks testified he sealed the leak around 10 years ago and it was effective in stopping the leak. ECF No. 72-3 at 9.

Accordingly, Plaintiffs' testimony establishes there was a leak 10 years prior to the loss, but Mr. Hendricks sealed the leak and as far as both of them knew, the leak did not persist. This does not, as Defendant suggests, establish that the damage to Plaintiffs' house was caused by a long-term leak.

**C. Mr. Sowell's Report**

Defendant also relies on the proffered expert testimony of Daniel Sowell to support the argument that the damage was caused by a long-term leak. ECF No. 92 at 9. However, the Court has since excluded the portions of Mr. Sowell's opinions addressing the cause of the damage and the duration of the roof leak. ECF No. 167. Therefore, the Court will not consider Mr. Sowell's stricken testimony for the purpose of deciding Defendant's Motion for Partial Summary Judgment. *Orr*, 285 F.3d at 773.

**D. Conclusion**

Based on the admissible evidence before the Court, Defendant has failed to establish a lack of a genuine dispute of a material fact regarding how long the roof leaked. Accordingly, the Court denies Defendant's Motion for Summary Judgment on the breach of contract and declaratory judgment claims.

## III. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on their claims for breach of contract, declaratory judgment, IFCA violations, and bad faith.[3] ECF No. 118. They seek an order declaring that the Policy covered the interior damage to their home, and therefore, because Defendant denied coverage, it breached the contract. *Id.* at 2-3. Additionally, Plaintiffs claim that Defendant failed to reasonably investigate their claims and failed to articulate a proper basis for denial of their benefits, therefore, they are entitled to summary judgment on the bad faith claim. *Id.*

---

[3] It is not actually clear which claims Plaintiffs are seeking summary judgment on. ECF No. 118. The caption of their motion lists declaratory judgment, breach of contract, and bad faith. *Id.* at 1. But the very first sentence lists *IFCA violations*, bad faith, and breach of contract. *Id.* Then on page three of their motion, Plaintiffs request summary judgment on declaratory judgment, breach of contract, and *claims handling violations*. *Id.* at 3. Finally, their conclusion requests summary judgment on declaratory judgment, breach of contract, claims handling violations, and bad faith, but not IFCA violations.

**A. Breach of Contract and Declaratory Judgment**

Plaintiffs move for summary judgment on their breach of contract and declaratory judgment claims, arguing that regardless of whether the damage to the roof is covered, Defendant is in breach by denying coverage for the interior damage. ECF No. 118 at 9-11. In the event Plaintiffs' roof did not suffer from "continuous or repeated seepage or leakage of water" for over two weeks, there would be no reason for Defendant to deny coverage, and its failure to provide coverage would constitute a breach. *See* ECF No. 125 at 2 (reason for denying coverage was long-term leak). As described above, however, there is a genuine dispute of material fact regarding the duration of the leak, therefore summary judgment cannot be granted to either party on this basis.

Accordingly, for purposes of summary judgment, Plaintiffs argue that even if the damage to their roof was properly excluded under the continuous seepage exclusion, the resulting damage to the interior of their home—including the attic, ceiling, living room, and its contents—is covered by the Policy's resulting loss clause. ECF No. 118 at 2, 9-10. Therefore, regardless of the duration of the leak, Plaintiffs argue they are entitled to summary judgment on their breach of contract and declaratory judgment claims regarding Defendant's failure to provide coverage for the resulting loss. *Id.* at 11.

*i. Resulting loss*

Directly after listing the various excluded perils—including the exclusion for long-term water seepage—the Policy states: "However, we do insure for any resulting loss from items 1. through 6. unless the resulting loss is itself excluded under Building Property Losses We Do Not Cover in this Section." ECF No. 76-1 at 33. This is known as a "resulting loss" clause. *See Gardens Condo. v. Farmers Ins. Exch.*, 544 P.3d 499, 501 (Wash. 2024) (en banc).

Under Washington law, "[a]n all-risk policy may bar coverage when an excluded peril causes damage; however, a resulting loss clause 'carves out an exception to the policy exclusion.'" *Gardens Condo.*, 544 P.3d 499 at 503 (quoting *Vision One, LLC, v. Philadelphia Indem. Ins. Co.*, 276 P.3d 300, 307 (Wash. 2012) (en banc)). In *Vision One*, the Washington Supreme Court offered an illustration of how these clauses operate to revive coverage:

> Suppose a contractor miswires a home's electrical system, resulting in a fire and significant damage to the home. And suppose the homeowner's policy excludes losses caused by faulty workmanship, but the exclusion contains an ensuing loss clause. In this situation, the ensuing loss clause would preserve coverage for damages caused by the fire. But it would not cover losses caused by the miswiring that the policy otherwise excludes. Nor would the ensuing loss clause provide coverage for the cost of correcting the faulty wiring.

276 P.3d at 307.

Plaintiffs argue the leaky roof caused water intrusion, which is a covered peril, and the water intrusion in turn caused damage to the interior of their home.

ECF No. 118 at 15. Therefore, just like the damage caused by the fire in the *Vision One* illustration, the damage caused by the water intrusion is covered by the resulting loss clause even if the leaky roof is not, itself, covered. Defendant argues that the anti-concurrent-causation clause in the Policy forecloses Plaintiffs' resulting loss argument. ECF No. 125 at 12. To understand why, a discussion of Washington's efficient proximate cause rule is warranted.

*ii. Efficient proximate cause*

Courts in Washington recognize the "efficient proximate cause" rule which "states that where a peril specifically insured against sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought, the loss is covered, even though other events within the chain of causation are excluded from coverage." *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 535 (Wash. 2022) (quoting *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000 (Wash. 1992). "Importantly, a policy cannot contract around the efficient proximate cause rule; i.e., it cannot contract to exclude coverage for excluded perils within a causal chain initially started by a covered peril." *Id.* at 536 (citing *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 881 P.2d 201 (Wash. 1994)).

The inverse of the efficient proximate cause rule is *not* a rule of law: "When an excluded peril sets in motion a causal chain that includes covered perils, the

efficient proximate cause rule does not mandate exclusion of the loss." *Vision One*, 276 P.3d at 309. Despite not being a rule of law, insurance policies can contract to include the inverse rule, that when an *excluded* peril initiates a sequence of events that includes covered perils, the resulting loss is excluded. *Hill & Stout*, 515 P.3d at 536. "[W]e have left open that insurers can contract to say that coverage is excluded for a causal chain initiated by an excluded peril." *Id.*

Here, Defendant cites to a paragraph in the Policy immediately preceding the excluded perils which states: "We do not cover loss caused directly or indirectly by any of the following excluded perils. *Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss*." ECF No. 76-1 at 32 (emphasis added). While this language would not cancel out the efficient proximate cause rule, it is effective[4] here in

[4] The court in *Hill & Stout* did not address whether a clause which contradicts the efficient proximate cause rule would be entirely void or just ineffective to the extent it contradicts the rule. In another case, the Washington Supreme Court seemed to take the latter approach, stating: "Inasmuch as the [clause] here conflicts with established Washington law, it cannot defeat [recovery]." *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1241 (2017), *as modified* (Aug. 16, 2017). A court in the Western District of Washington appeared to take the same approach:

denying coverage because an *excluded* peril initiated the chain of events leading to the loss. *Hill & Stout*, 515 P.3d at 536; *Kinsale Ins. Co. v. VBC Madison LP*, 2025 WL 2592195, at *5 (W.D. Wash. Sept. 8, 2025) (finding a Fire Exclusion clause to be "unenforceable to the extent it excludes coverage that would be mandated" by the efficient proximate cause rule).

It is apparent that the leaky roof was the efficient proximate cause of the ensuing damage because the leaky roof resulted directly in the water intrusion which Plaintiffs claim is a separate, covered peril. ECF No. 130 at 3 (parties agree damage was "due to water ingress through the roof"). Therefore, assuming the leaky roof is an excluded peril, the damage to the interior of Plaintiffs' home would not be covered because an excluded peril initiated the chain of events which resulted in damage to the interior. *Hill & Stout*, 515 P.3d at 536.

To succeed on their Motions for Summary Judgment on the breach of contract and declaratory judgment claims, Plaintiffs needed to prove the interior damage would be covered by the Policy regardless of whether the roof leak was

---

"Because the efficient proximate cause rule applies, the Fire Exclusion is unenforceable *to the extent it excludes coverage that would be mandated by the rule*." *Kinsale Ins. Co. v. VBC Madison LP*, 2025 WL 2592195, at *5 (W.D. Wash. Sept. 8, 2025) (emphasis added) (citing *Xia*, 400 P.3d at 1241).

also covered. Defendant raised the issue of the anti-concurrent-causation provision in the Policy and Plaintiffs failed to argue why Defendant's interpretation of the provision is wrong. *See* ECF No. 127. Plaintiffs failed to establish the lack of a genuine dispute of material fact regarding this issue. Accordingly, Plaintiffs' motion for summary judgment is denied with respect to their claims for breach of contract and declaratory judgment.

**B. IFCA Violations and Bad Faith**

Plaintiffs argue they are entitled to summary judgment on the issues of bad faith and IFCA violations because Defendant (1) listed multiple potential causes and exclusions for the damage, (2) failed to inspect the property prior to denying their claim, (3) failed to analyze efficient proximate cause and resulting loss, and (4) failed to analyze additional coverage for mold or fungi and emergency repairs. ECF No. 118 at 9-19.

Under Washington Administrative Code (WAC) 284-30-330(13), "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" is an unfair claims settlement practice. A violation of WAC 284-30-330 constitutes a violation of the IFCA. RCW 48.30.015(5). Additionally, "[t]o succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was unreasonable, frivolous, or

unfounded." *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (2003). If reasonable minds could differ as to whether Defendant's conduct was reasonable, Plaintiffs are not entitled to summary judgment. *Id.*

*i. Multiple reasons for denial*

First, Plaintiffs argue that Defendant's denial is a violation of the IFCA and constitutes bad faith because Defendant cited multiple exclusions and stated "one or more" applied. ECF No. 118 at 11-12. Defendant initially denied Plaintiffs' claim in a February 21, 2025, letter which stated:

> The policy does not provide coverage [for] wear and tear, deterioration, fungi, wet or dry rot, or for continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture, or vapor which occurs over a period of weeks, months or years, whether hidden or not. Because the damage was caused by one or more of the above conditions, there is no coverage for this claim.

ECF No. 76-3 at 3. Plaintiffs argue this violates WAC 284-30-330(13) and is therefore a violation of the IFCA. ECF No. 118 at 12. Plaintiffs did not cite to any legal authority to support their position that identifying multiple exclusions constitutes bad faith or a violation of IFCA.

Nothing in WAC 284-30-330(13), precludes an insurer from identifying multiple exclusions as the basis for denying coverage. That being said, Defendant's initial denial letter did fail to explain how the exclusions related to the facts of Plaintiffs' claim, which is required by the WAC. ECF No. 76-3 at 3. However, Defendant sent an additional letter on April 4, 2025, further describing

the basis for the denial of coverage. ECF No. 76-5. In this letter, Defendant explained the photos taken by Restoration 1 showed evidence of long-term water seepage, wear and tear, and mold and fungi—all of which were excluded perils. *Id.* at 2. This effectively related the policy exclusions to the facts of Plaintiffs' claim as required by WAC 284-30-330(13).

Plaintiffs failed to advance any persuasive argument as to why the April 4, 2025, letter should be ignored. A reasonable jury could find that Defendant's explanation in the April 4, 2025, letter constituted a "reasonable explanation" of the basis for denying coverage in compliance with WAC 284-30-330(13). Therefore, Plaintiffs are not entitled to summary judgment on their bad faith and IFCA claims on the basis that Defendant's explanation violated WAC 284-30-330(13).

*ii. Failure to inspect property*

Next, Plaintiffs argue that Defendant's failure to inspect the property prior to denying their claim constitutes bad faith and a violation of the IFCA. ECF No. 118 at 12. Under WAC 284-30-330(4), insurers are prohibited from denying coverage before conducting a "reasonable investigation," and violation of this rule constitutes a violation of the IFCA. RCW 48.30.015(5). "Failure to conduct a reasonable investigation constitutes bad faith." *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 785, opinion modified on denial of reconsideration, 36 P.3d 552 (Wash. Ct.

App. 2001) (citing *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 937 (Wash. 1998)).

Plaintiffs cite two cases to support their argument that Defendant's failure to physically inspect their home constitutes an unreasonable investigation, neither is persuasive. First, in *Fireman's Fund Ins. Co. v. Alaskan Pride P'ship*, the court merely held that a jury could find insurer bad faith for denying coverage when the cause of the loss was undetermined. 106 F.3d 1465, 1470 (9th Cir. 1997). Second, in *Aecon Bldgs., Inc. v. Zurich North America*, the court noted that "it is an insurer's affirmative duty to investigate a claim before it denies coverage." 572 F.Supp.2d 1227, 1236 (W.D. Wash. 2008). Neither case stands for the proposition that an insurer must conduct an in-person inspection of a property before denying a claim.

Defendant argues that it conducted a reasonable investigation of Plaintiffs' claim by reviewing Restoration 1's inspection report. ECF No. 125 at 15. Guidance from the Washington Office of the Insurance Commissioner appears to buttress Defendant's position. The Office's website states: "Your insurance company is not required to send an adjuster to inspect your home. The company may send out an adjuster, contractor or other professional to inspect the damage to your home." Wash. State Off. of the Ins. Comm'r., *Filing a homeowner insurance claim*, https://www.insurance.wa.gov/insurance-resources/home-insurance/home-

insurance-claims/filing-homeowner-insurance-claim (last visited Oct. 14, 2026). Without any case law suggesting otherwise, a reasonable jury could determine that reviewing a mitigation vendor's photographs and reports constituted a "reasonable investigation" under WAC 284-30-330(4). Therefore, a genuine issue of material fact exists, and Plaintiffs are not entitled to summary judgment on this basis.

*iii. Failure to address alternative theories for coverage*

Plaintiffs argue that Defendant's failure to analyze efficient proximate cause and resulting loss in its denial letter constituted a failure to provide a "reasonable explanation" for the basis of denial in violation of WAC 284-30-330(13). ECF No. 118 at 13. They further argue that Defendant's failure to analyze mold and emergency repair coverages also establishes a violation of IFCA and insurer bad faith. ECF No. 118 at 17-18.

"A party's failure to cite legal authority in support of its position 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Eritrean Ass'n of Greater Seattle v. Gebrekidan*, 2025 WL 306181, at *3 (W.D. Wash. Jan. 27, 2025) (quoting *Goldberg for Jay Peak, Inc. v. Raymond James Fin., Inc.*, 2017 WL 7791564, *7 (S.D. Fla. Mar. 27, 2017)). "Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).

As to these arguments, Plaintiffs fail to cite any legal authorities in support of their position. *See* ECF No. 118 at 15-18. Instead, Plaintiffs rely on a claim decision letter sent by Defendant to a different plaintiff/insured in a similar case also before this Court, *Fiorentino v. Safeco Ins. Co. of Am.*, No. 2:25-CV-00342-MKD. *See* ECF No. 118 at 16. In the *Fiorentino* letter, Defendant analyzed coverage under efficient proximate cause and resulting loss doctrines, and it determined there was partial coverage under a mold sublimit. ECF No. 76-8 at 2-4. Plaintiffs argue the fact that Defendant included those analyses in the *Fiorentino* letter but not in the letter to Plaintiffs establishes that Defendant violated WAC 284-30-330(13). ECF No. 118 at 18.

While Defendant's analysis may be inconsistent between the two claim decision letters, Plaintiffs do not present any legal authority establishing that such an inconsistency constitutes a violation of IFCA or insurer bad faith. The two policies at issue appear to be similar, but the facts of the *Fiorentino* case are different than the facts of this case. A reasonable jury could determine that, based on the factual differences, Defendant acted reasonably in omitting the alternative coverage analysis in this case.

## CONCLUSION

Neither party satisfied the burden of establishing the lack of a genuine dispute of material fact which would entitle them to summary judgment.

Accordingly, for the reasons stated above, the Court denies both parties' motions for partial summary judgment.

Accordingly, **IT IS HEREBY ORDERED:**

**1.** Plaintiffs' Motion to Strike, **ECF No. 80** is **DENIED.**

**2.** Defendant's Amended Motion for Partial Summary Judgment, **ECF No. 92** is **DENIED.**

**3.** Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 118** is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

DATED November 3, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE